IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| SWITZER PRODUCTS, LLC, | ) | Case No. 04 B 03214 |
| | ) | |
| Debtor | ) | Hon. Carol A. Doyle |
| | ) | |
| CHARLES J. MYLER, solely as trustee in bankruptcy, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 05 A 01276 |
| | ) | |
| v. | ) | |
| | ) | |
| CADLEROCK JOINT VENTURE, L.P., JUSTIN TANKS LLC, BHARAT SHAH, ACS COUSINS, INC., | ) | |
| | ) | |
| Defendants | ) | |

MEMORANDUM OPINION

This matter comes before the court on cross-motions for summary judgment by Charles J. Myler, the Chapter 7 trustee ("trustee") in the bankruptcy of Switzer Products, LLC ("Switzer"), and defendants Cadlerock Joint Venture, L.P. ("Cadlerock") and ACS Cousins, Inc. ("ACS"). The parties dispute whether Cadlerock and ACS possess valid liens in the debtor's ownership interest in Justin Tanks LLC ("Justin Tanks"), a limited liability company. The court concludes that Switzer's interest in Justin Tanks is a general intangible over which Cadlerock has a valid and perfected security interest. The court will therefore enter summary judgment in favor of

Cadlerock. However, the court cannot determine from the record before it whether ACS has a valid lien against Switzer's assets, so the motions with respect to ACS will be denied.

I.     **Factual Background and Issues**

Switzer, an Illinois limited liability company, filed a voluntary Chapter 11 petition on January 28, 2004. The case was later converted to Chapter 7. Switzer owns a membership interest in Justin Tanks, a small Delaware limited liability company.

Cadlerock, Switzer's principal creditor, claims a secured debt of approximately $1.5 million. Switzer executed a series of promissory notes, security agreements and financing statements in favor of Citizens Bank-Illinois, N.A. ("Citizens") in 1998, 1999 and 2002. Cadlerock is the successor in interest to Citizens Bank. ACS also claims a security interest in the Justin Tanks membership interest by reason of a subordinated security agreement, financing statement and a judgment it obtained against Switzer on December 3, 2003, in the amount of $195,395.06.

The trustee filed this adversary proceeding to determine the validity and extent of the liens asserted against Switzer's interest in Justin Tanks. The trustee filed a motion for summary judgment, and ACS and Cadlerock filed cross-motions for summary judgment.

No material facts are in dispute with respect to Cadlerock. The principal issue is whether Cadlerock has a security interest in Switzer's ownership interest in Justin Tanks. Switzer granted Cadlerock a security interest in "all general intangibles," and the question is whether Switzer's membership interest in Justin Tanks falls within the scope of that phrase. With respect to ACS, however, as will be discussed below, the record presented with the motions is not clear

enough to permit the court to determine whether ACS has a security interest in Switzer's interest in Justin Tanks.

## II. Jurisdiction and Standard on Summary Judgment

The court has subject matter jurisdiction over this case under 28 U.S.C. § 1334. This proceeding to determine the validity or extent of a lien against property of a bankruptcy estate is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; Bellaver v. Quanex Corp., 200 F.3d 485, 491 (7th Cir. 2000). The function of the presiding court is not to weigh evidence and to make credibility determinations or to attempt to determine the truth of the matter, but rather "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990). The court views the facts in a light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences to be drawn from that evidence. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir. 2000). The party moving for summary judgment "has the burden of showing the absence of a genuine issue of material fact." Pommier v. Peoples Bank Marycrest, 967 F.2d 1115, 1118 (7th Cir. 1992) (citation omitted).

-3-

### III. Cadlerock's Security Interest

The three agreements between Switzer and Cadlerock specify the collateral as "[a]ll inventory, chattel paper, accounts, equipment and general intangibles, whether now existing or hereafter arising" and "[a]ll Accounts, Documents, Instruments, General Intangibles, Chattel Paper, and Goods, whether now existing or hereafter arising or acquired." No one contests the validity of the agreements or whether the proper filings were made to perfect any security interest created under them. The parties dispute whether Switzer's interest in Justin Tanks is a "general intangible" covered by the security agreement.

The trustee contends that Switzer's interest in this limited liability corporation is a security or an instrument that cannot be a "general intangible" under Article 9 of the Uniform Commercial Code. He argues that, because the description of the collateral in the security agreements does not include securities or specifically describe the membership interest in Justin Tanks, that interest is not part of Cadlerock's collateral. Cadlerock argues that Switzer's interest in Justin Tanks is personal property that is part of Switzer's general intangibles covered by the agreements, not a security.

#### A. Security Agreements in General Intangibles

Illinois law applies to these contracts. Article 9 of the Uniform Commercial Code as adopted in Illinois ("UCC") governs whether Cadlerock has a valid security interest in Switzer's ownership interest in Justin Tanks. Under Article 9, a security interest attaches "when it becomes enforceable against the debtor with respect to the collateral." 810 ILCS 5/9-203(a). To be enforceable, the debtor must authenticate a security agreement that provides a description of

-4-

the collateral. 810 ILCS 5/9-203(b)(3)(A). A description is sufficient if it "reasonably identifies what is described." 810 ILCS 5/9-108(a). A description of collateral by type satisfies this requirement. 810 ILCS 5/9-108(b)(3).[1] The security agreements list all "general intangibles," which is a type of collateral. The definition of "general intangibles" in section 102 of Article 9 encompasses all personal property not specifically excluded from the definition. Section 102(a)(42) provides as follows: "'General intangible' means *any personal property*, including things in action, *other than* accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software." 810 ILCS 5/9-102(a)(42) (emphasis added).

The trustee asserts that the membership interest in Justin Tanks is a security that falls within the definition of "investment property," which is excluded from the definition of "general intangible." "Investment property" is defined as "a security, whether certificated or uncertificated, security entitlement, securities account, commodity contract, or commodity account." 810 ILCS 5/9-102(a)(49).[2] Section 102(b) of Article 9 incorporates the definition of "security" from Article 8 of the UCC. 810 ILCS 5/9-102(b). Section 102(a)(15) of Article 8 provides a general definition of "security," "except as otherwise provided in section 103." 810 ILCS 5/8-102(a)(15). Section 103 specifically addresses interests in limited liability companies.

---

[1] The court has applied revised Article 9, applicable as of July 1, 2001, because the third agreement dated December 6, 2002 secures all of Switzer's indebtedness. It would reach the same conclusion if it applied former Article 9.

[2] Under former Article 9, certificated securities were included in the definition of "instruments." Ill. St. ch. 26 ¶ 9–105(1)(I) (amended 2001). That distinction is not relevant here, because the court concludes that the membership interest is not a security.

-5-

It provides that a membership interest is "not a security *unless dealt in or traded on securities exchanges [or] its terms expressly provide that it is a security governed by this article*" 810 ILCS 5/8–103(c) (emphasis added). Thus, an interest in a limited liability company is a security only if it is actually traded on a securities exchange or its terms expressly provide that it is governed by Article 8.

The trustee has presented no evidence, nor even any argument, that membership interests in Justin Tanks are traded on a securities exchange. Nor has the trustee argued that the Justin Tanks operating agreement provides that it is governed by Article 8 of the UCC. The court has reviewed the operating agreement, and it does not mention Article 8. Therefore, simply applying the relevant provisions of the UCC, there is no question that Switzer's interest in Justin Tanks is not a security.

The trustee ignores section 103(c) of Article 8, and instead argues that the interest in Justin Tanks is a security because the membership interest entitles the owner to periodic cash distributions. However, under section 103(c), the right to a distribution under the operating agreement or the Delaware statute under which Justin Tanks was created is not relevant. Switzer's interest in Justin Tanks is personal property that falls squarely within the definition of a general intangible, which encompasses all personal property not otherwise defined in Article 9. 810 ILCS 5/9–102(a)(42); Del. Code Ann. tit. 6, § 18-701 (2000) ("A limited liability company interest is personal property."); see <u>Newcombe v. Sundara</u>, 274 Ill. App. 3d 590, 595–96 (1995) (holding that a limited partnership interest is a general intangible because it is personal property not defined elsewhere in Article 9).

### B. "All General Intangibles" Is Not Generic or Ambiguous

The trustee also argues that the description "all general intangibles" is too generic or ambiguous to reasonably identify the membership interests. He relies on Material Service Corp. v. Bogdajewicz, 69 Ill. App. 3d 742, 747–48 (1979), a case which held the description "certain land trusts" insufficient. There, however, the description did not fail because it was too generic. Rather, the phrase "certain land trusts" was ambiguous because it indicated an intent to grant an interest in some, but not all, land trusts—without specifying *which* land trusts the debtor intended to give as security. Id. Here, the debtor has granted an interest in *all* general intangibles. Further, the phrase "all general intangibles," unlike "certain land trusts," is not ambiguous because it uses a type of collateral defined in the UCC. The Material Service court recognized this important distinction by citing a number of decisions approving descriptions that included a type of collateral. Id. at 747.

Under both former and revised Article 9, supergeneric descriptions ("all assets" or "all personal property") fail. However, the security agreement at issue in this case does not use a supergeneric description. Revised Article 9 provides that description by type of collateral suffices. 810 ILCS 5/9-103(b)(3). Even though "general intangible" is defined by what it is not, rather than what it is, it is a defined type of collateral that is specific enough to give rise to a security interest. The court therefore concludes that "all general intangibles" in the Cadlerock agreements reasonably identifies any collateral which legally constitutes a general intangible.

### IV. ACS's Security Interest

The trustee also moved for summary judgment with respect to the security interest of ACS. However, the trustee does not explain how ACS may have a security interest in Switzer's ownership interest of Justin Tanks. ACS filed a cross-motion for summary judgment, but its filings do not establish that it is entitled to judgment. ACS's motion states that it was an original owner of Switzer, and that it is a secured creditor of Switzer based on three documents: (1) a judgment entered on December 3, 2003 against Switzer in the amount of $195,395.06; (2) a Subordinated Security Agreement dated March 3, 1998, and (3) a UCC Financing Statement filed June 26, 2001. ACS then adopts the arguments made by Cadlerock. In its Statement of Facts required by Local Rule 7056-1, ACS simply refers to these three documents without attaching them or explaining how they create a security interest in favor of ACS.

The court reviewed a "Subordinated Security Agreement" entered between Switzer Acquisition, LLC as "Debtor" and Switzer Products Corp. as "Lender," which was attached to ACS's answer to the complaint. It does not refer at all to Switzer Products, LLC or ACS. Neither side explains the basis for ACS's claim of a security interest in Justin Tanks. The court therefore cannot determine whether ACS has a security interest in Justin Tanks or not. Both motions will be denied with respect to ACS.

### V. Conclusion

Switzer's membership interest in Justin Tanks is a general intangible in which Cadlerock has a security interest. The court will enter judgment denying the trustee's motion with respect to Cadlerock and granting Cadlerock's cross-motion for summary judgment. However, the

trustee's motion with respect to ACS and ACS's cross motion for summary judgment are denied for lack of explanation of the basis for ACS's claim of a security interest.

Dated: October 19, 2005

ENTERED:

_____
CAROL A. DOYLE
United States Bankruptcy Judge